Matt Putterman (CA Bar No. 306845)
**PUTTERMAN LAW, APC**
23 Corporate Plaza Drive - Suite 150
Newport Beach, CA 92660
Telephone: (949) 271-6382
E-Mail: Matt@Putterman-Law.com

David C. Silver (*pro hac vice forthcoming*)
**SILVER MILLER**
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone: (954) 516-6000
E-Mail: DSilver@SilverMillerLaw.com

*Attorneys for Plaintiff Graciela Jacobo*

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

GRACIELA JACOBO, an individual;

Plaintiff,

v.

JOHN DOE, an individual;

Defendant.

Case No. ______________________

**COMPLAINT FOR:**
**(1) FRAUDULENT INDUCEMENT**
**(2) NEGLIGENT MISREPRESENTATIONS**
**(3) REPLEVIN**
**(4) CONVERSION**
**(5) UNJUST ENRICHMENT**
**(6) IMPOSITION OF A CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS**
**(7) VIOLATION OF CALIFORNIA PENAL CODE § 496 (POSSESSION OF STOLEN PROPERTY)**

Plaintiff GRACIELA JACOBO, an individual (hereafter referred to as "Plaintiff"), by and through undersigned counsel, hereby sues Defendant JOHN DOE, an individual; for damages and equitable relief. As grounds therefor, Plaintiff alleges the following:

## PRELIMINARY STATEMENT

1. This action is brought by Plaintiff, a California citizen, who lost approximately One Million Four Hundred Thousand Dollars ($1,400,000.00) worth of cryptocurrency from a fraudulent investment scheme.

2. Defendant JOHN DOE played a material role in the scheme to steal Plaintiff's assets and, upon information and belief, currently possesses all or a significant portion of Plaintiff's stolen property.

3. As a result of Defendant's fraudulent behavior, Plaintiff has suffered grave economic harm for which she seeks compensatory relief and to recover her stolen assets.

## PARTIES, JURISDICTION AND VENUE

### THE PARTIES

### Plaintiff

4. Plaintiff GRACIELA JACOBO is an individual domiciled in Bakersfield, California, is a citizen of the state of California, and is *sui juris*.

### Defendant

5. Defendant JOHN DOE is an individual and, upon information and belief, is *sui juris*.

6. At all times material hereto, JOHN DOE has maintained -- and continues to maintain as of the date of this filing -- private cryptocurrency wallets and cryptocurrency exchange accounts in which JOHN DOE holds all or a portion of the cryptocurrency stolen from Plaintiff.

### Other Liable Persons/Entities

7. In addition to Defendant JOHN DOE, there are likely other parties who may be liable to Plaintiff, but about whom Plaintiff currently lacks specific facts to permit him to name these persons

or entities as party defendants. By not naming such persons or entities at this time, Plaintiff is not waiving her right to amend this pleading to add such parties, should the facts warrant adding such parties.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

9. This Court has personal jurisdiction over Defendant because he or she committed a tort in this jurisdiction.

10. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391 because the causes of action accrued in this jurisdiction.

## GENERAL FACTUAL ALLEGATIONS

11. On or about May 5, 2022, Plaintiff's son -- with whom she jointly maintains a MetaMask cryptocurrency wallet -- was contacted by Defendant JOHN DOE on Twitter, a social networking service. After exchanging some messages on Twitter, Plaintiff's son began engaging in conversations with Defendant on the messaging platform WhatsApp. Defendant directed their conversation to cryptocurrency investing and said he could show Plaintiff how easy it was to make money with cryptocurrency.

12. At all times relevant hereto, Plaintiff's son acted as an authorized agent for Plaintiff to communicate on her behalf pertaining to the matters addressed herein.

13. Defendant represented to Plaintiff's son that Defendant and the entity for which Defendant worked is affiliated with the Ethereum Foundation, a very well-known and widely-respected nonprofit organization dedicated to supporting Ethereum and related technologies.

14. Ethereum -- as the Ethereum Foundation's website explains -- is a "global, open-source platform used for programmable money and decentralized applications that allow users have control over their own data."

15. Through his communications with Plaintiff's son, Defendant established in Plaintiff's son and Plaintiff herself -- who conferred with her son on all such matters -- a sense of trust, reliability, and dependability.

16. Under Defendant's guidance and instruction, Plaintiff's MetaMask cryptocurrency wallet was linked to a website (www.AMMDeFi.org) that Defendant represented would allow Plaintiff to have her assets placed into a liquidity pool for a limited period of time. Upon the expiration of that limited period of time, Plaintiff would receive back her invested assets plus interest on her contribution to the pooled funds.

17. Plaintiff funded her MetaMask wallet with approximately One Million Four Hundred Thousand Dollars ($1,400,000.00); used those funds to purchase Tether[1], and then allowed those Tether to be invested in the vehicle explained and overseen by Defendant JOHN DOE.

18. The investment vehicle into which Defendant lured Plaintiff, however, was falsely represented and was nothing but a sham vehicle designed by Defendant to gain direct access to the funds in Plaintiff's MetaMask wallet.

19. Whenever Defendant showed Plaintiff an up-to-date balance of her investment position, the information provided to Plaintiff was complete fiction.

[1] Tether (often abbreviated with the symbol "USDT") is a cryptocurrency hosted on the Ethereum and Bitcoin blockchains. It is categorized as a "stablecoin," because it was originally designed so that each coin would always be worth One Dollar ($1.00 USD). Thus, one USDT is worth roughly $1.00; and 1,400,000 USDT are worth roughly $1,400,000.00. Tether has one of the largest market caps, and is one of the most widely-circulated cryptocurrencies, in the world.

20. Moreover, each time Plaintiff requested to withdraw some or all of her funds from the investment pool, Defendant proffered false excuses as to why Plaintiff would be unable to withdraw any of her funds.

21. When Plaintiff sought to withdraw a portion of her funds, Defendant represented that withdrawal would require Plaintiff to pay an exit fee of several hundred thousand dollars, which made withdrawal imprudent and excessively costly.

22. Upon information and belief, Defendant's excuse of an "exit fee" was a fabrication designed to keep Plaintiff's funds under Defendant's control and designed to afford Defendant additional time to abscond with Plaintiff's assets.

23. The only true reason why Plaintiff was unable to withdraw her funds is that Defendant was defrauding her and taking every available opportunity to extort additional funds from Plaintiff.

24. Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendant has stolen all of Plaintiff's assets; and those assets have been transferred to cryptocurrency accounts under Defendant's sole control or have been liquidated into fiat currency and dissipated by Defendant.

25. For example, Plaintiff's stolen assets have been traced to, *inter alia*, the following cryptocurrency wallet addresses at cryptocurrency exchanges BINANCE, FTX, OKX (OKEx), POLONIEX, TOKENLON, and GATE.IO -- wallet addresses which are believed to be owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets and which have been used to launder the assets stolen from Plaintiff:

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| **Binance** | 43ecaea7f78fe65f83646a864b2c73349793ddfe | USDT | 45,730.26604 |
| **Binance** | 5cccacf95cd5df55d95e3864af4551de094784c2 | USDT | 222,583.588 |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| **Binance** | 8f44af4f841ffd7db201e81f8deb66e6eea99c06 | USDT | 45,543.36493 |
| **Binance** | bff9f1d0d9156feb7b3182102d4ac226b9c2c44c | USDT | 95,118.95336 |
| **Binance** | c7e185922f923c438fc29b92309153816ba17498 | USDT | 4,082.182561 |
| | | TOTAL | **413,058.3549 USDT** |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| **FTX** | 456fc7ea0b17b51e08a861af94e13f1dceba1db9 | USDT | 83,856.95211 |
| | | TOTAL | **83,856.95211 USDT** |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| **OKX (OKEx)** | 64452a2f3af318d86d947ba33beadfe39456ed3a | USDT | 272,540.4773 |
| | | TOTAL | **272,540.4773 USDT** |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| **Poloniex** | ee861cfb2a34eb5e73ccd92fce9e4b3b6a37a2db | USDT | 72,386.28453 |
| | | TOTAL | **72,386.28453 USDT** |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| **TokenIon** | 8d90113a1e286a5ab3e496fbd1853f265e5913c6 | USDT | 230,153.7314 |
| | | TOTAL | **230,153.7314 USDT** |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| **gate.io** | 29084a44f69510471e41a91f37ee59c088e71804 | USDT | 46,782.12103 |
| | | TOTAL | **46,782.12103 USDT** |

26. As a result of the actions described above, Plaintiff has suffered damages in an amount that will be proven at trial.

27. Plaintiff duly performed all of her duties and obligations; and any conditions precedent to Plaintiff bringing this action have occurred, have been performed, or else have been excused or waived.

28. To enforce her rights, Plaintiff has retained undersigned counsel and is obligated to pay counsel a reasonable fee for its services.

**COUNT I – FRAUDULENT INDUCEMENT**

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 28 above, and further alleges:

29. Commencing in or about May 2022, Defendant JOHN DOE made multiple representations and statements to Plaintiff, including but not limited to the following:

(a) Plaintiff would be wise to invest funds in Defendant's cryptocurrency program, which was affiliated with the Ethereum Foundation;

(b) Plaintiff's MetaMask cryptocurrency wallet would be linked to a website (www.AMMDeFi.org) that Defendant represented would allow Plaintiff to have her assets placed into a liquidity pool for a limited period of time. Upon the expiration

of that limited period of time, Plaintiff would receive back her invested assets plus interest on her contribution to the pooled funds; and

(c) Plaintiff could safely manage or oversee the cryptocurrency investments Plaintiff would be making.

30. While making the above-referenced representations to Plaintiff, Defendant JOHN DOE purposely withheld from her the following:

(a) Defendant gave Plaintiff a false web link that tied her MetaMask wallet to a cryptocurrency wallet under Defendant's control;

(b) Defendant would obstruct Plaintiff's efforts to withdraw any of her assets in the investment program by demanding from Plaintiff exorbitant and unjustified exit fees;

(c) Defendant would obstruct Plaintiff's efforts to recover her lost assets if anything should go wrong with Plaintiff's investments; and

(d) Defendant was simply operating an investment scam aimed at stealing Plaintiff's funds.

31. Plaintiff relied on the above-listed material misrepresentations and omissions of material fact in deciding to entrust her funds to Defendant.

32. At the time Defendant made those representations to Plaintiff, Defendant knew of their falsity.

33. Contrary to the representations made to Plaintiff, Plaintiff could not safely manage or oversee the cryptocurrency assets in which she invested.

34. Defendant intended to induce Plaintiff into sending her funds to Defendant's control by making these material misrepresentations and omissions, thereby causing Plaintiff to rely upon those statements and omissions of material fact.

35. Plaintiff reasonably and justifiably relied on Defendant's statements and omissions of material facts.

36. As a direct and proximate result of Plaintiff's reliance on the statements and omissions of material facts made by Defendant, Plaintiff suffered damage.

## COUNT II – NEGLIGENT MISREPRESENTATIONS

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 28 above, and further alleges:

37. Commencing in or about May 2022, Defendant made multiple representations and statements to Plaintiffs, including but not limited to the following:

(a) Plaintiff would be wise to invest funds in Defendant's cryptocurrency program, which was affiliated with the Ethereum Foundation;

(b) Plaintiff's MetaMask cryptocurrency wallet would be linked to a website (www.AMMDeFi.org) that Defendant represented would allow Plaintiff to have her assets placed into a liquidity pool for a limited period of time. Upon the expiration of that limited period of time, Plaintiff would receive back her invested assets plus interest on her contribution to the pooled funds; and

(c) Plaintiff could safely manage or oversee the cryptocurrency investments Plaintiff would be making.

38. While making the above-referenced representations to Plaintiff, Defendant purposely withheld from her the following:

(a) Defendant gave Plaintiff a false web link that tied her MetaMask wallet to a cryptocurrency wallet under Defendant's control;

(b) Defendant would obstruct Plaintiff's efforts to withdraw any of her assets in the investment program by demanding from Plaintiff exorbitant and unjustified exit fees;

(c) Defendant would obstruct Plaintiff's efforts to recover her lost assets if anything should go wrong with Plaintiff's investments; and

(d) Defendant was simply operating an investment scam aimed at stealing Plaintiff's funds.

39. Plaintiff relied on the above-listed material misrepresentations and omissions of material fact in deciding to entrust her funds to Defendant.

40. At the time Defendant made those representations to Plaintiff, Defendant knew or should have known of their falsity.

41. Contrary to the representations made to Plaintiff, Plaintiff could not safely manage or oversee the cryptocurrency assets in which she invested.

42. Defendant intended to induce Plaintiff into sending her funds to Defendant's control by making these material misrepresentations and omissions, thereby causing Plaintiff to rely upon those statements and omissions of material fact.

43. Plaintiff reasonably and justifiably relied on Defendant's statements and omissions of material facts.

44. As a direct and proximate result of Plaintiff's reliance on the statements and omissions of material facts made by Defendant, Plaintiff suffered damage.

**COUNT III – REPLEVIN**

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 28 above, and further alleges:

45. This is an action to recover possession of personal property.

46. The property at issue is 1,413,392.96 USDT.

47. Upon information and belief, the U.S. Dollar equivalent value of the personal property as of the date of theft is approximately One Million Four Hundred Thirteen Thousand Three Hundred Ninety-Two Dollars and Ninety-Six Cents ($1,413,392.96).

48. As of the date of this filing, the personal property at issue is believed to be stored in the Destination Addresses delineated above which are believed to be owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets.

49. Plaintiff owned and had the right to immediately possess the personal property -- not just a mere right to payment for the value of those cryptocurrencies -- that was taken from her.

50. JOHN DOE has intentionally exercised control, and continues to exercise control, over the cryptocurrencies in such a way as to exclude Plaintiff from using or possessing them.

51. The property has not been taken for any tax, assessment or fine pursuant to law, nor has it been taken under an execution or attachment against Plaintiff's property.

**COUNT IV – CONVERSION**

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 28 above, and further alleges:

52. At all times material hereto, Plaintiff owned and had the right to immediately possess the cryptocurrency assets Defendant represented to her that had been deposited into a liquidity pool from which Plaintiff would earn interest -- not just a mere right to payment for the value of those assets -- that was taken from her and transferred to, *inter alia*, the accounts owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets.

53. When the cryptocurrency assets were deposited by Plaintiff into what she believed was a liquidity pool from which Plaintiff would earn interest but actually were deposited under false pretenses into a cryptocurrency wallet Defendant controlled, Defendant intentionally took possession of and assumed control over Plaintiff's assets.

54. Defendant has intentionally exercised control, and continues to exercise control, over Plaintiff's cryptocurrency assets in such a way as to exclude Plaintiff from using or possessing those assets.

55. Defendant knew the property he received was stolen or obtained in a manner constituting theft.

56. As such, Defendant wrongfully converted Plaintiff's cryptocurrency assets.

57. Defendant -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendant should not be permitted to hold.

58. The cryptocurrency assets at issue are specific, identifiable property and can be traced in assets of Defendant's account(s) at BINANCE, FTX, OKX (OKEx), POLONIEX, TOKENLON, and GATE.IO and elsewhere.

59. As a direct and proximate result of the foregoing, Plaintiff suffered the wrongful conversion of personal property whose value exceeds Seventy-Five Thousand Dollars ($75,000.00).

**COUNT V - UNJUST ENRICHMENT**

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 28 above, and further alleges:

60. Plaintiff conferred a direct benefit upon Defendant JOHN DOE (albeit unwillingly so) by providing the extremely valuable cryptocurrency that Defendant stole from Plaintiff.

61. Defendant has knowledge of the benefit Plaintiff conferred upon him and has retained such benefit.

62. The circumstances under which Plaintiff conferred, and Defendant accepted, such benefit render Defendant's retention of the benefits inequitable.

63. Equity requires that Defendant return to Plaintiff the benefits she conferred upon Defendant.

**COUNT VI – IMPOSITION OF A CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS**

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 28 above, and further alleges:

64. This is an action to impose a constructive trust upon the property taken from Plaintiff that is currently held by Defendant JOHN DOE in the Destination Addresses delineated above.

65. This action further calls for the restoration to Plaintiff of that wrongfully obtained property.

66. As set forth above, Defendant JOHN DOE -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendant should not be permitted to hold.

67. The cryptocurrency assets at issue are specific, identifiable property and can be traced in assets of Defendant JOHN DOE's at the Destination Addresses and elsewhere.

68. Any and all assets being held by Defendant in the Destination Addresses must be held in trust for Plaintiff's benefit, as Defendant is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

69. The 1,413,392.96 USDT identified herein which are being held by JOHN DOE or his accomplices in the Destination Addresses must be disgorged to Plaintiff's benefit, as Defendant is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

**COUNT VII – VIOLATION OF CALIFORNIA PENAL CODE § 496**
**(Possession of Stolen Property)**

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 28 above, and further alleges:

70. This cause of action asserts a claim against JOHN DOE for the actual theft of Plaintiff's property as well as for receiving, aiding in concealing, and withholding from Plaintiff the stolen property.

71. In pertinent part, Cal. Penal Code sec. 496(a) imposes liability upon "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained" and provides that "[a] principal in the actual theft of the property may be convicted pursuant to this section."

72. Furthermore, Cal. Penal Code sec. 496(c) provides: "Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

73. Plaintiff's cryptocurrency assets were stolen from her, or were obtained by, Defendant JOHN DOE in a manner constituting theft.

74. Defendant JOHN DOE knew the property was stolen.

75. JOHN DOE received and had (and, upon information and belief, still has) possession of the property stolen from Plaintiff.

76. JOHN DOE is liable to Plaintiff for three times the amount of Plaintiff's actual damages, the costs of this suit, and all reasonable attorney's fees incurred by plaintiff in connection herewith.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff GRACIELA JACOBO, an individual, respectfully prays for relief as follows:

(a) A judgment awarding Plaintiff equitable restitution, including, without limitation, restoration of the *status quo ante*, and return to Plaintiff all cryptocurrency or fiat currency taken from her in connection with the investment scam perpetrated upon Plaintiff by Defendant JOHN DOE;

(b) The equitable imposition of a constructive trust over the property taken from Plaintiff that is currently held by Defendant JOHN DOE, an individual, in the Destination Addresses; and entry of an Order that the wrongfully obtained property be restored to Plaintiff;

(c) An award of any and all additional damages recoverable under law including but not limited to compensatory damages, lost profits, expenses, treble damages, punitive damages, incidental damages, and consequential damages;

(d) Pre- and post-judgment interest;

(e) Attorneys' fees, expenses, and the costs of this action; and

(f) All other and further relief as the Court deems necessary, just, and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

**RESERVATION OF RIGHTS**

Plaintiff reserves her right to further amend this Complaint, upon further investigation and discovery, to assert any additional claims for relief against Defendant or other parties as may be warranted under the circumstances and as allowed by law.

Respectfully submitted,

By: _/s/ Matt Putterman_

Matt Putterman (CA Bar No. 306845)
**PUTTERMAN LAW, APC**
23 Corporate Plaza Drive - Suite 150
Newport Beach, CA 92660
Telephone: (949) 271-6382
E-Mail: Matt@Putterman-Law.com

David C. Silver (*pro hac vice* forthcoming)
**SILVER MILLER**
4450 NW 126th Avenue – Suite 101
Coral Springs, Florida 33065
Telephone: (954) 516-6000
E-Mail: DSilver@SilverMillerLaw.com

*Attorneys for Plaintiff Graciela Jacobo*

Dated: June 3, 2022