Matt Putterman (CA Bar No. 306845)
**PUTTERMAN LAW, APC**
23 Corporate Plaza Drive - Suite 150
Newport Beach, CA 92660
Telephone: (949) 271-6382
E-Mail: Matt@Putterman-Law.com

David C. Silver (*pro hac vice forthcoming*)
**SILVER MILLER**
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone: (954) 516-6000
E-Mail: DSilver@SilverMillerLaw.com

*Attorneys for Plaintiff Graciela Jacobo*

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACIELA JACOBO, an individual;<br><br>    Plaintiff,<br><br>v.<br><br>JOHN DOE, an individual;<br><br>    Defendant. | Case No. _____<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AGAINST DEFENDANT JOHN DOE** |

# **TABLE OF CONTENTS**

Page

RELEVANT FACTUAL BACKGROUND ................................................................................... 1

ARGUMENT .................................................................................................................................. 5

    I.    Rule 65 Permits Entry of a Temporary Restraining Order Without Notice ............................ 5

    II.    The Court Can Issue an Injunction to Freeze Assets in this Action for Equitable Relief ....... 6

    III.    A Temporary Restraining Order Is Appropriate To Prevent Immediate And Irreparable Harm ............................................................................................................. 8

    IV.    Plaintiff Has a Substantial Likelihood of Success on the Merits of Her Claims ..................... 8

    V.    Plaintiff Will Suffer Irreparable Harm if Defendant John Doe Is Not Enjoined ................... 10

    VI.    There Is Little Prejudice to Defendant Doe If the Temporary Restraining Order Is Entered .. 10

    VII.    Plaintiff Has No Adequate Remedy at Law ................................................................... 10

    VIII.    Entering a Temporary Restraining Order Is In the Public Interest ........................................ 10

CONCLUSION ............................................................................................................................. 11

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
WITHOUT NOTICE AGAINST DEFENDANT JOHN DOE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) .................................................................................................. 8

*Astrove v. Doe*,
    Case No. 22-CV-80614-RAR (S.D. Fla. April 22, 2022) ............................................................ 7

*Clayton v. Heartland Resources, Inc.*
    2008 WL 5046806 (W.D. Ky. Nov. 21, 2008) ............................................................................ 6

*Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*
    415 U.S. 423 (1974) ................................................................................................................... 7

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*
    527 U.S. 308 (1999) ................................................................................................................... 6

*Heissenberg v. Doe*
    Case No. 21-CV-80716-ALTMAN/Brannon (S.D. Fla. April 23, 2021) ..................................... 7

*Hoggan v. Specialized Loan Servicing, LLC*
    No. 2:21-cv-01862-TLN-CKD, 2021 WL 5180150 (E.D. Cal. Nov. 8, 2021) ............................. 8

*In re Fin. Federated Title and Trust, Inc.*
    347 F.3d 880 (11th Cir. 2003) .................................................................................................... 9

*In re Focus Media, Inc.*
    387 F.3d 1077, 1084 (9th Cir. 2004) ......................................................................................... 6

*Martinangeli v. Akerman, LLP*
    Case No. 1:18-cv-23607-UU, 2018 WL 6308705 (S.D. Fla. Sept. 14, 2018) ............................. 7

*Mattel, Inc. v. MGA Entm't, Inc.*
    616 F.3d 904 (9th Cir. 2010) ...................................................................................................... 9

*Right to Life of Central California v. Bonta*
    562 F.Supp.3d 947 (E.D. Cal. 2021) .......................................................................................... 8

*Rumbaugh v. Harley*
    No. 2:18-cv-01970-KJM-AC, 2018 WL 4002854 (E.D. Cal Aug 22, 2018) ............................... 7

*Williams v. Doe*
    Case No. 6:21-cv-03074-RK (W.D. Mo. Apr. 1, 2021) ............................................................... 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
WITHOUT NOTICE AGAINST DEFENDANT JOHN DOE

**Rules**

Fed. R. Civ. P. 64 ............................................................................................................. 6

Fed. R. Civ. P. 65(b)(1)(A) .............................................................................................. 5

Fed. R. Civ. P. 65(b)(1)(B) .............................................................................................. 5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
WITHOUT NOTICE AGAINST DEFENDANT JOHN DOE

Plaintiff GRACIELA JACOBO, an individual ("Plaintiff" or "JACOBO"), by and through her undersigned attorneys, respectfully submits this memorandum of points and authorities in support of her Emergency Motion for entry of a Temporary Restraining Order (TRO) against Defendant JOHN DOE, an individual, freezing his assets -- including the Destination Addresses (defined below) maintained by him, for him, or by any entity under his control (the "Motion").

## RELEVANT FACTUAL BACKGROUND

On or about May 5, 2022, Plaintiff's son -- with whom she jointly maintains a MetaMask cryptocurrency wallet -- was contacted by Defendant JOHN DOE on Twitter, a social networking service. *See*, Declaration of GRACIELA JACOBO (Dated: June 2, 2022) [the "Jacobo Decl."] at ¶ 4 (citing Compl. at ¶ 11), a copy of which is filed in connection herewith.  After exchanging some messages on Twitter, Plaintiff's son began engaging in conversations with Defendant on the messaging platform WhatsApp.  *Id*. Defendant directed their conversation to cryptocurrency investing and said he could show Plaintiff how easy it was to make money with cryptocurrency. *Id*.  At all times relevant hereto, Plaintiff's son acted as an authorized agent for Plaintiff to communicate on her behalf pertaining to the matters addressed herein. *Id*. (citing Compl. at ¶ 12).

Defendant represented to Plaintiff's son that Defendant and the entity for which Defendant worked is affiliated with the Ethereum Foundation, a very well-known and widely-respected nonprofit organization dedicated to supporting Ethereum and related technologies.  *Id*. (citing Compl. at ¶ 13).  Ethereum -- as the Ethereum Foundation's website explains -- is a "global, open-source platform used for programmable money and decentralized applications that allow users have control over their own data." *Id*. (citing Compl. at ¶ 14).

Through his communications with Plaintiff's son, Defendant established in Plaintiff's son and Plaintiff herself -- who conferred with her son on all such matters -- a sense of trust, reliability, and dependability.  *Id*. (citing Compl. at ¶ 15).

Under Defendant's guidance and instruction, Plaintiff's MetaMask cryptocurrency wallet was linked to a website (www.AMMDeFi.org) that Defendant represented would allow Plaintiff

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
WITHOUT NOTICE AGAINST DEFENDANT JOHN DOE

to have her assets placed into a liquidity pool for a limited period of time. *Id*. (citing Compl. at ¶ 16). Upon the expiration of that limited period of time, Plaintiff would receive back her invested assets plus interest on her contribution to the pooled funds. *Id*. Plaintiff funded her MetaMask wallet with approximately One Million Four Hundred Thousand Dollars ($1,400,000.00); used those funds to purchase Tether[1], and then allowed those Tether to be invested in the vehicle explained and overseen by Defendant JOHN DOE. *Id*. (citing Compl. at ¶ 17). The investment vehicle into which Defendant lured Plaintiff, however, was falsely represented and was nothing but a sham vehicle designed by Defendant to gain direct access to the funds in Plaintiff's MetaMask wallet. *Id*. (citing Compl. at ¶ 18). Whenever Defendant showed Plaintiff an up-to-date balance of her investment position, the information provided to Plaintiff was complete fiction. *Id*. (citing Compl. at ¶ 19).

Moreover, each time Plaintiff requested to withdraw some or all of her funds from the investment pool, Defendant proffered false excuses as to why Plaintiff would be unable to withdraw any of her funds. *Id*. (citing Compl. at ¶ 20). When Plaintiff sought to withdraw a portion of her funds, Defendant represented that withdrawal would require Plaintiff to pay an exit fee of several hundred thousand dollars, which made withdrawal imprudent and excessively costly. *Id*. (citing Compl. at ¶ 21). Upon information and belief, Defendant's excuse of an "exit fee" was a fabrication designed to keep Plaintiff's funds under Defendant's control and designed to afford Defendant additional time to abscond with Plaintiff's assets. *Id*. (citing Compl. at ¶ 22). The only true reason why Plaintiff was unable to withdraw her funds is that Defendant was defrauding her and taking every available opportunity to extort additional funds from Plaintiff. *Id*. (citing Compl. at ¶ 23).

---

[1] Tether (often abbreviated with the symbol "USDT") is a cryptocurrency hosted on the Ethereum and Bitcoin blockchains. It is categorized as a "stablecoin," because it was originally designed so that each coin would always be worth One Dollar ($1.00 USD). Thus, one USDT is worth roughly $1.00; and 1,400,000 USDT are worth roughly $1,400,000.00. Tether has one of the largest market caps, and is one of the most widely-circulated cryptocurrencies, in the world.

2
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
WITHOUT NOTICE AGAINST DEFENDANT JOHN DOE

Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendant has stolen all of Plaintiff's assets; and those assets have been transferred to cryptocurrency accounts under Defendant's sole control or have been liquidated into fiat currency and dissipated by Defendant. *Id*. (citing Compl. at ¶ 24).  For example, Plaintiff's stolen assets have been traced to, *inter alia*, the following cryptocurrency wallet addresses at cryptocurrency exchanges BINANCE, FTX, OKX (OKEx), POLONIEX, TOKENLON, and GATE.IO -- wallet addresses which are believed to be owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets and which have been used to launder the assets stolen from Plaintiff [*Id*. (citing Compl. at ¶ 25)]:

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| **Binance** | 43ecaea7f78fe65f83646a864b2c73349793ddfe | USDT | 45,730.26604 |
| **Binance** | 5cccacf95cd5df55d95e3864af4551de094784c2 | USDT | 222,583.588 |
| **Binance** | 8f44af4f841ffd7db201e81f8deb66e6eea99c06 | USDT | 45,543.36493 |
| **Binance** | bff9f1d0d9156feb7b3182102d4ac226b9c2c44c | USDT | 95,118.95336 |
| **Binance** | c7e185922f923c438fc29b92309153816ba17498 | USDT | 4,082.182561 |
| | | TOTAL | **413,058.3549 USDT** |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| **FTX** | 456fc7ea0b17b51e08a861af94e13f1dceba1db9 | USDT | 83,856.95211 |
| | | TOTAL | **83,856.95211 USDT** |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
WITHOUT NOTICE AGAINST DEFENDANT JOHN DOE

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| OKX (OKEx) | 64452a2f3af318d86d947ba33beadfe39456ed3a | USDT | 272,540.4773 |
| | | TOTAL | 272,540.4773 USDT |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| Poloniex | ee861cfb2a34eb5e73ccd92fce9e4b3b6a37a2db | USDT | 72,386.28453 |
| | | TOTAL | 72,386.28453 USDT |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| TokenIon | 8d90113a1e286a5ab3e496fbd1853f265e5913c6 | USDT | 230,153.7314 |
| | | TOTAL | 230,153.7314 USDT |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| gate.io | 29084a44f69510471e41a91f37ee59c088e71804 | USDT | 46,782.12103 |
| | | TOTAL | 46,782.12103 USDT |

As a result of the foregoing scheme, Plaintiff has lost approximately One Million Four Hundred Thousand Dollars ($1,400,000.00) and is left trying to get answers to help her uncover

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
WITHOUT NOTICE AGAINST DEFENDANT JOHN DOE

where her funds are or where they went after they were stolen by JOHN DOE. Given these facts, Plaintiff commenced this action and is entitled to a Temporary Restraining Order freezing Defendant JOHN DOE's assets -- including the Destination Addresses maintained by Defendant JOHN DOE, for him, or by any entity under his control -- to preserve the *status quo ante* pending the outcome of this litigation.

## ARGUMENT

### I. Rule 65 Permits Entry of a Temporary Restraining Order Without Notice

1. Rule 65 permits this Court to enter a Temporary Restraining Order without notice to the adverse parties if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition." Fed.R.Civ.P. 65(b)(1)(A). Further, the movant's counsel must certify in writing "any efforts made to give notice and the reasons why it should not be required." Fed.R.Civ.P. 65(b)(1)(B).

2. As to the first prong of Rule 65(b)(1), Plaintiff's declaration, summarized and cited above, shows the likelihood of immediate and irreparable injury or loss. Plaintiff was clearly victimized and robbed by JOHN DOE; and the stone wall of obfuscation erected by the anonymous nature of cryptocurrency transactions significantly inhibits Plaintiff's ability to trace his stolen funds or even identify JOHN DOE by his proper legal name at this point.

3. By freezing JOHN DOE's assets -- including the Destination Addresses to which JOHN DOE transferred any portion of the funds stolen from Plaintiff -- Plaintiff will have a foothold in his arduous climb to recovering his stolen cryptocurrency before JOHN DOE can further transfer it beyond Plaintiff's reach.

4. With regard to the second prong of Rule 65(b)(1), a TRO is warranted without notice to JOHN DOE. JOHN DOE's proper legal name is unknown at this point, and only through

expedited discovery to the cryptocurrency exchanges at which the Destination Addresses are/were maintained might Plaintiff be able to uncover JOHN DOE's name and a location -- either physical or electronic -- at which he can be apprised of the charges brought against him in this lawsuit so he may defend himself against those charges, if he so chooses. *See*, Declaration of David C. Silver (Dated: June 2, 2022) [the "Silver Decl."] at ¶¶ 5-8, a copy of which is filed in connection herewith.

5. Furthermore, Plaintiff certifies a deep concern that with each passing hour, JOHN DOE will dissipate any traceable funds, either into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.

## II.   The Court Can Issue an Injunction to Freeze Assets in this Action for Equitable Relief

6. Under the general rule, federal courts lack the authority to freeze assets of a defendant before the claims have been brought to judgment. *See*, *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). "However, when the plaintiff is seeking equitable relief, as opposed to merely legal damages, the federal courts have the authority to issue a preliminary injunction in order to freeze the assets of a defendant if the requirements for a preliminary injunction are otherwise satisfied." *Clayton v. Heartland Resources, Inc*., 2008 WL 5046806, at *4 (W.D. Ky. Nov. 21, 2008) (citing *Grupo*, 527 U.S. at 324-325); *see also*, *In re Focus Media, Inc*., 387 F.3d 1077, 1084 (9th Cir. 2004) (citations omitted). In *Focus Media*, the Ninth Circuit specifically noted that the rule against injunctive relief as articulated in *Grupo Mexicano* did not apply to the underlying claims for fraudulent conveyance and constructive trust, ultimately concluding that the trial court's entry of a preliminary injunction had been proper. *Id.* at 1085.

7. Moreover, Rule 64 of the Federal Rules of Civil Procedure provides that when state law authorizes a prejudgment remedy to secure assets subject to a plaintiff's state law claims, state

law governs such relief.  Rule 64, Fed.R.Civ.P.; *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*, 415 U.S. 423, 436 n. 10 (1974).

8.    Here, Plaintiff seeks equitable relief in addition to her legal remedies and is entitled to an injunction to maintain the *status quo* until the claims in the Complaint can be resolved. Amongst other claims and remedies sought, Plaintiff alleges violations of numerous common law torts (conversion, replevin, unjust enrichment) and requests relief in the following form of equity:

- A judgment awarding Plaintiff equitable restitution, including, without limitation, restoration of the *status quo ante*, and return to Plaintiff all cryptocurrency or fiat currency taken from her in connection with the investment scam perpetrated upon Plaintiff by Defendant JOHN DOE

- the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently held by Defendant JOHN DOE, an individual, in the Destination Addresses; and [entry of an Order] that the wrongfully obtained property be restored to Plaintiff.

9.    Additionally, with regard to the claim for imposition of a constructive trust, this Court has authorized equitable injunctive relief to secure the assets subject to the claim.  *See*, *e.g.*, *Rumbaugh v. Harley*, No. 2:18-cv-01970-KJM-AC, 2018 WL 4002854, at *9 (E.D. Cal Aug 22, 2018).

10.    In disputes strikingly similar to the instant action, both this court and others have awarded the preliminary equitable relief sought by Plaintiff here.  *See*, *Martinangeli v. Akerman, LLP*, Case No. 1:18-cv-23607-UU, 2018 WL 6308705 (S.D. Fla. Sept. 14, 2018) (entering Temporary Restraining Order without notice to defendant whose assets were thereby frozen); *Heissenberg v. Doe*, Case No. 21-CV-80716-ALTMAN/Brannon (S.D. Fla. April 23, 2021) at DE 14 (*same*); *Williams v. Doe*, Case No. 6:2l-cv-03074-RK (W.D. Mo. Apr. 1, 2021) at DE 18 (*same*); and *Astrove v. Doe*, Case No. 22-CV-80614-RAR (S.D. Fla. April 22, 2022) at DE 4 (*same*), copies of which are attached hereto as **Composite Exhibit "A"**.

11. Accordingly, Plaintiff is entitled to a Temporary Restraining Order if the other requirements for a Temporary Restraining Order have been met. For the reasons described below, Plaintiff is entitled to such relief.

### III. A Temporary Restraining Order Is Appropriate to Prevent Immediate and Irreparable Harm

12. The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'

*Right to Life of Central California v. Bonta*, 562 F.Supp.3d 947 (E.D. Cal. 2021) (citations omitted).

13. In evaluating Plaintiff's request for a TRO, the court may weigh Plaintiff's showings using a sliding-scale approach.

> A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."

*Hoggan v. Specialized Loan Servicing, LLC*, No. 2:21-cv-01862-TLN-CKD, 2021 WL 5180150, at *2 (E.D. Cal. Nov. 8, 2021), citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

14. As shown below, Plaintiff satisfies each element of that standard.

### IV. Plaintiff Has a Substantial Likelihood of Success on the Merits of Her Claims

15. The harms alleged in the Complaint, as well as the facts set forth in Plaintiff's declaration, make clear that Plaintiff was victimized by JOHN DOE who -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiff's cryptocurrency, which in equity and good conscience JOHN DOE should not be permitted to hold.

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
WITHOUT NOTICE AGAINST DEFENDANT JOHN DOE

16. Based on that fraudulent behavior, Plaintiff has asserted claims for: (1) fraudulent inducement, (2) negligent misrepresentations, (3) replevin, (4) conversion, (5) unjust enrichment, and (6) violation of California Penal Code § 496.

17. Moreover, any and all cryptocurrency assets held in the Destination Addresses to which JOHN DOE transferred any portion of the funds stolen from Plaintiff must be held in a constructive trust for Plaintiff's benefit, as JOHN DOE is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

18. In light of the foregoing, there is a high likelihood that Plaintiff will succeed on her claims.

19. As for Plaintiff's request that a constructive trust be applied, California law provides that a constructive trust is appropriately imposed as follows:

> "A plaintiff seeking imposition of a constructive trust must show: (1) the existence of a res, meaning property or some interest in property; (2) the right to that res; and (3) the wrongful acquisition or detention of the res by another party who is not entitled to it."

*Rumbaugh*, 2018 WL 4002854, at *9, citing *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 909 (9th Cir. 2010). A constructive trust is therefore appropriately established "to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction." *In re Fin. Federated Title and Trust, Inc.*, 347 F.3d 880, 891 (11th Cir. 2003).

20. As such, success on the merits of Plaintiff's common law claims is very likely.

### V. Plaintiff Will Suffer Irreparable Harm if Defendant John Doe Is Not Enjoined

21. There is a significant risk that JOHN DOE may dissipate the money stolen from Plaintiff or simply transfer those funds into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.

22. Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze JOHN DOE's assets, including those in the Destination Addresses, to maintain the *status quo* to avoid dissipation of the digital assets illegally taken from Plaintiff.

### VI. There Is Little Prejudice to Defendant Doe If the Temporary Restraining Order Is Entered

23. While Plaintiff would be severely prejudiced if JOHN DOE dissipates the funds wrongfully taken from Plaintiff, JOHN DOE faces no such prejudice. An order forbidding JOHN DOE from moving his assets will, at worst, delay JOHN DOE from shifting his purloined funds to an untraceable cryptocurrency accounts; and at best, will help maintain the *status quo* for Plaintiff to recover the valuable assets illegally obtained from Plaintiff's cryptocurrency account.

### VII. Plaintiff Has No Adequate Remedy at Law

24. Plaintiff's only remedy to recover the funds fraudulently taken from her is through her right to equitable relief in the form of enjoining asset dissipation by JOHN DOE, beginning with imposition of a constructive trust to prevent the further dissipation of Plaintiff's assets. A legal remedy for monetary relief alone will not adequately protect Plaintiff's equitable ownership interest in those funds and assets that can disappear with the click of a computer mouse.

### VIII. Entering a Temporary Restraining Order Is In the Public Interest

25. The public interest strongly supports entry of a Temporary Restraining Order here.

26. Moreover, entering a Temporary Restraining Order would actually serve the public interest by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) by providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined investor assets in this action.

## CONCLUSION

For the foregoing reasons, Plaintiff GRACIELA JACOBO respectfully requests that this Court find Plaintiff has satisfied the elements of her claim for preliminary injunctive relief and that the Court enter a Temporary Restraining Order without notice to Defendant JOHN DOE, freezing his assets -- including the Destination Addresses to which JOHN DOE transferred any portion of the funds stolen from Plaintiff -- to preserve the *status quo ante* pending the full adjudication of Plaintiff's claims.

Respectfully submitted,

By: */s/ Matt Putterman*
Matt Putterman (CA Bar No. 306845)
**PUTTERMAN LAW, APC**
23 Corporate Plaza Drive - Suite 150
Newport Beach, CA 92660
Telephone: (949) 271-6382
E-Mail: Matt@Putterman-Law.com

David C. Silver (*pro hac vice* forthcoming)
**SILVER MILLER**
4450 NW 126th Avenue – Suite 101
Coral Springs, Florida 33065
Telephone: (954) 516-6000
E-Mail: DSilver@SilverMillerLaw.com

*Attorneys for Plaintiff Graciela Jacobo*

Dated:   June 3, 2022