**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GRACIELA JACOBO, an individual;<br><br>　　　Plaintiff,<br><br>v.<br><br>JOHN DOE, an individual;<br><br>　　　Defendant. | Case No. _____<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AGAINST DEFENDANT JOHN DOE** |

　　　This matter is before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order Without Notice against Defendant JOHN DOE (the "Motion").  [Docket Entry No. ("Doc. No.") _____ ].  Under Federal Rule of Civil Procedure 65, a Court may grant a Temporary Restraining Order *ex parte*.  As required by the Rule, specific facts in the form of an affidavit or Verified Complaint must demonstrate an "immediate and irreparable injury, loss, or damage will result to movant before the adverse party can be heard in opposition," and the attorney for the movant must certify in writing any efforts made to provide notice to the adverse party.  *See*, Fed.R.Civ.P. 65(b)(1).  Any Order issued without notice to the adverse party must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice and be promptly filed in the Clerk's Office and entered in the record.  The Order expires at a time after entry -- not to exceed fourteen (14) days." *Id*. at (b)(2).

　　　For the reasons explained below, the court will grant plaintiff's motion for a temporary restraining order in its entirety.

## **BACKGROUND**

In her Complaint, Plaintiff alleged the following, which she verified in an accompanying Declaration:

On or about May 5, 2022, Plaintiff's son -- with whom she jointly maintains a MetaMask cryptocurrency wallet -- was contacted by Defendant JOHN DOE on Twitter, a social networking service. *See*, Declaration of GRACIELA JACOBO (Dated: June 2, 2022) [the "Jacobo Decl."] at ¶ 4 (citing Compl. at ¶ 11).  After exchanging some messages on Twitter, Plaintiff's son began engaging in conversations with Defendant on the messaging platform WhatsApp. *Id*. Defendant directed their conversation to cryptocurrency investing and said he could show Plaintiff how easy it was to make money with cryptocurrency. *Id*.  At all times relevant hereto, Plaintiff's son acted as an authorized agent for Plaintiff to communicate on her behalf pertaining to the matters addressed herein. *Id*. (citing Compl. at ¶ 12).

Defendant represented to Plaintiff's son that Defendant and the entity for which Defendant worked is affiliated with the Ethereum Foundation, a very well-known and widely-respected nonprofit organization dedicated to supporting Ethereum and related technologies. *Id*. (citing Compl. at ¶ 13). Ethereum -- as the Ethereum Foundation's website explains -- is a "global, open-source platform used for programmable money and decentralized applications that allow users have control over their own data." *Id*. (citing Compl. at ¶ 14).

Through his communications with Plaintiff's son, Defendant established in Plaintiff's son and Plaintiff herself -- who conferred with her son on all such matters -- a sense of trust, reliability, and dependability. *Id*. (citing Compl. at ¶ 15).

Under Defendant's guidance and instruction, Plaintiff's MetaMask cryptocurrency wallet was linked to a website (www.AMMDeFi.org) that Defendant represented would allow Plaintiff to have her assets placed into a liquidity pool for a limited period of time. *Id*. (citing Compl. at ¶ 16).  Upon the expiration of that limited period of time, Plaintiff would receive back her invested assets plus interest on her contribution to the pooled funds. *Id*.  Plaintiff funded her MetaMask wallet with approximately One Million Four Hundred Thousand Dollars ($1,400,000.00); used those funds to

purchase Tether[1], and then allowed those Tether to be invested in the vehicle explained and overseen by Defendant JOHN DOE.  *Id*. (citing Compl. at ¶ 17).  The investment vehicle into which Defendant lured Plaintiff, however, was falsely represented and was nothing but a sham vehicle designed by Defendant to gain direct access to the funds in Plaintiff's MetaMask wallet.  *Id*. (citing Compl. at ¶ 18).  Whenever Defendant showed Plaintiff an up-to-date balance of her investment position, the information provided to Plaintiff was complete fiction.  *Id*. (citing Compl. at ¶ 19).

Moreover, each time Plaintiff requested to withdraw some or all of her funds from the investment pool, Defendant proffered false excuses as to why Plaintiff would be unable to withdraw any of her funds.  *Id*. (citing Compl. at ¶ 20).  When Plaintiff sought to withdraw a portion of her funds, Defendant represented that withdrawal would require Plaintiff to pay an exit fee of several hundred thousand dollars, which made withdrawal imprudent and excessively costly.  *Id*. (citing Compl. at ¶ 21).  Upon information and belief, Defendant's excuse of an "exit fee" was a fabrication designed to keep Plaintiff's funds under Defendant's control and designed to afford Defendant additional time to abscond with Plaintiff's assets.  *Id*. (citing Compl. at ¶ 22).  The only true reason why Plaintiff was unable to withdraw her funds is that Defendant was defrauding her and taking every available opportunity to extort additional funds from Plaintiff.  *Id*. (citing Compl. at ¶ 23).

Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendant has stolen all of Plaintiff's assets; and those assets have been transferred to cryptocurrency accounts under Defendant's sole control or have been liquidated into fiat currency and dissipated by Defendant.  *Id*. (citing Compl. at ¶ 24).  For example, Plaintiff's stolen assets have been traced to, *inter alia*, the following cryptocurrency wallet addresses at cryptocurrency exchanges BINANCE, FTX, OKX (OKEx), POLONIEX, TOKENLON, and GATE.IO -- wallet addresses which are believed to be owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets and which have been used to launder the assets stolen from Plaintiff [*Id*. (citing Compl. at ¶ 25)]:

---

[1] Tether (often abbreviated with the symbol "USDT") is a cryptocurrency hosted on the Ethereum and Bitcoin blockchains.  It is categorized as a "stablecoin," because it was originally designed so that each coin would always be worth One Dollar ($1.00 USD).  Thus, one USDT is worth roughly $1.00; and 1,400,000 USDT are worth roughly $1,400,000.00.  Tether has one of the largest market caps, and is one of the most widely-circulated cryptocurrencies, in the world.

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| Binance | 43ecaea7f78fe65f83646a864b2c73349793ddfe | USDT | 45,730.26604 |
| Binance | 5cccacf95cd5df55d95e3864af4551de094784c2 | USDT | 222,583.588 |
| Binance | 8f44af4f841ffd7db201e81f8deb66e6eea99c06 | USDT | 45,543.36493 |
| Binance | bff9f1d0d9156feb7b3182102d4ac226b9c2c44c | USDT | 95,118.95336 |
| Binance | c7e185922f923c438fc29b92309153816ba17498 | USDT | 4,082.182561 |
|  |  | TOTAL | **413,058.3549 USDT** |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| FTX | 456fc7ea0b17b51e08a861af94e13f1dceba1db9 | USDT | 83,856.95211 |
|  |  | TOTAL | **83,856.95211 USDT** |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| OKX (OKEx) | 64452a2f3af318d86d947ba33beadfe39456ed3a | USDT | 272,540.4773 |
|  |  | TOTAL | **272,540.4773 USDT** |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| Poloniex | ee861cfb2a34eb5e73ccd92fce9e4b3b6a37a2db | USDT | 72,386.28453 |
|  |  | TOTAL | **72,386.28453 USDT** |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| **TokenIon** | 8d90113a1e286a5ab3e496fbd1853f265e5913c6 | USDT | 230,153.7314 |
| | | TOTAL | **230,153.7314 USDT** |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| **gate.io** | 29084a44f69510471e41a91f37ee59c088e71804 | USDT | 46,782.12103 |
| | | TOTAL | **46,782.12103 USDT** |

As a result of the foregoing scheme, Plaintiff has lost approximately One Million Four Hundred Thousand Dollars ($1,400,000.00) and is left trying to get answers to help her uncover where her funds are or where they went after they were stolen by JOHN DOE.  Given these facts, Plaintiff commenced this action and is entitled to a Temporary Restraining Order freezing Defendant JOHN DOE's assets -- including the Destination Addresses maintained by Defendant JOHN DOE, for him, or by any entity under his control -- to preserve the *status quo ante* pending the outcome of this litigation.

## **LEGAL STANDARD**

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  *See*, *Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also*, *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  The Ninth Circuit has also held that an "injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to

the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 97 (9th Cir. 2008) (*en banc*)).[2]  The party seeking the injunction bears the burden of proving these elements.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also*, *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## ANALYSIS

Under the general rule, federal courts lack the authority to freeze assets of a defendant before the claims have been brought to judgment.  *See*, *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc*., 527 U.S. 308, 322 (1999).  "However, when the plaintiff is seeking equitable relief, as opposed to merely legal damages, the federal courts have the authority to issue a preliminary injunction in order to freeze the assets of a defendant if the requirements for a preliminary injunction are otherwise satisfied." *Clayton v. Heartland Resources, Inc*., 2008 WL 5046806, at *4 (W.D. Ky. Nov. 21, 2008) (citing *Grupo*, 527 U.S. at 324-325); *see also*, *In re Focus Media, Inc*., 387 F.3d 1077, 1084 (9th Cir. 2004) (citations omitted).  In *Focus Media*, the Ninth Circuit specifically noted that the rule against injunctive relief as articulated in *Grupo Mexicano* did not apply to the underlying claims for fraudulent conveyance and constructive trust, ultimately concluding that the trial court's entry of a preliminary injunction had been proper.  *Id*. at 1085.

Moreover, Rule 64 of the Federal Rules of Civil Procedure provides that when state law authorizes a prejudgment remedy to secure assets subject to a plaintiff's state law claims, state law governs such relief.  Rule 64, Fed.R.Civ.P.; *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*, 415 U.S. 423, 436 n. 10 (1974).

---

[2] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *All. for the Wild Rockies*, 632 F.3d at 1134. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135.

Here, Plaintiff seeks equitable relief in addition to her legal remedies and is entitled to an injunction to maintain the status quo until the claims in the Complaint can be resolved.  Amongst other claims and remedies sought, Plaintiff alleges violations of numerous common law torts (conversion, replevin, unjust enrichment) and requests relief in the following form of equity:

- A judgment awarding Plaintiff equitable restitution, including, without limitation, restoration of the status quo ante, and return to Plaintiff all cryptocurrency or fiat currency taken from her in connection with the investment scam perpetrated upon Plaintiff by Defendant JOHN DOE

- the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently held by Defendant JOHN DOE, an individual, in the Destination Addresses; and [entry of an Order] that the wrongfully obtained property be restored to Plaintiff.

Additionally, with regard to the claim for imposition of a constructive trust, this Court has authorized equitable injunctive relief to secure the assets subject to the claim.  *See, e.g.*, *Rumbaugh v. Harley*, No. 2:18-cv-01970-KJM-AC, 2018 WL 4002854, at *9 (E.D. Cal Aug 22, 2018).

Thus, the court will begin its analysis by considering the likelihood that plaintiff will prevail on the merits.

I. **Plaintiff Has a Substantial Likelihood of Success on the Merits of Her Claims**

The harms alleged in the Complaint, as well as the facts set forth in Plaintiff's declaration, make clear that Plaintiff was victimized by JOHN DOE who -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiff's cryptocurrency, which in equity and good conscience JOHN DOE should not be permitted to hold.

Based on that fraudulent behavior, Plaintiff has asserted claims for: (1) fraudulent inducement, (2) negligent misrepresentations, (3) replevin, (4) conversion, (5) unjust enrichment, and (6) violation of California Penal Code § 496.

Moreover, any and all cryptocurrency assets held in the Destination Addresses to which JOHN DOE transferred any portion of the funds stolen from Plaintiff must be held in a constructive trust for Plaintiff's benefit, as JOHN DOE is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

In light of the foregoing, there is a high likelihood that Plaintiff will succeed on her claims.

As for Plaintiff's request that a constructive trust be applied, California law provides that a constructive trust is appropriately imposed as follows:

> "A plaintiff seeking imposition of a constructive trust must show: (1) the existence of a res, meaning property or some interest in property; (2) the right to that res; and (3) the wrongful acquisition or detention of the res by another party who is not entitled to it."

*Rumbaugh*, 2018 WL 4002854, at *9, citing *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 909 (9th Cir. 2010).  A constructive trust is therefore appropriately established "to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction."  *In re Fin. Federated Title and Trust, Inc.*, 347 F.3d 880, 891 (11th Cir. 2003).

As such, success on the merits of Plaintiff's common law claims is very likely.

## II.     Plaintiff Will Suffer Irreparable Harm if Defendant John Doe Is Not Enjoined

There is a significant risk that JOHN DOE may dissipate the money stolen from Plaintiff or simply transfer those funds into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.  Without entry of the Temporary Restraining Order, Plaintiff may be unable to recover for her equitable claims.

Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze JOHN DOE's assets, including those in the Destination Addresses, to maintain the *status quo* to avoid dissipation of the assets illegally taken from Plaintiff.

In light of the foregoing, Plaintiff has established in her Motion and the Declaration in support thereof that Plaintiff's rights will be immediately and irreparably harmed absent a Temporary Restraining Order from this Court.

## III.     There Is Little Prejudice to Defendant Doe If the Temporary Restraining Order Is Entered

While Plaintiff would be severely prejudiced if JOHN DOE dissipates the funds wrongfully taken from Plaintiff, JOHN DOE faces no such prejudice.  An order forbidding JOHN DOE from moving his assets will, at worst, delay JOHN DOE from shifting his purloined funds to an untraceable cryptocurrency accounts; and at best, will help maintain the *status quo* for Plaintiff to recover the valuable assets illegally obtained from Plaintiff's cryptocurrency account.

## IV.     Plaintiff Has No Adequate Remedy at Law

Plaintiff's only remedy to recover the funds fraudulently taken from her is through her right to

equitable relief in the form of enjoining asset dissipation by JOHN DOE, beginning with imposition of a constructive trust to prevent the further dissipation of Plaintiff's assets.  A legal remedy for monetary relief alone will not adequately protect Plaintiff's equitable ownership interest in those funds and assets that can disappear with the click of a computer mouse.

### V.     Entering a Temporary Restraining Order Is In the Public Interest

As it pertains to the balance of the equities, the Ninth Circuit has "held that when a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." *World Wide Factors*, 882 F.2d 344, 347 (9th Cir. 1989) (*citing Federal Trade Comm'n v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1165 (9th Cir. 1984)). "Public equities include, but are not limited to, economic effects and pro-competitive advantages for consumers . . . ." *Id.*

The public interest strongly supports entry of a Temporary Restraining Order here.

Moreover, entering a Temporary Restraining Order would actually serve the public interest by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) by providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined investor assets in this action.

As set forth herein, Plaintiff is entitled to a Temporary Restraining Order freezing Defendant JOHN DOE's assets -- including the Destination Addresses maintained by Defendant JOHN DOE, for him, or by any entity under his control -- to preserve the *status quo ante* pending the outcome of this litigation.   Moreover, because of the apparent strength of Plaintiff's case, the Court concludes that Plaintiff need only provide a modest amount of security pursuant to Fed.R.Civ.P. 65(c) at this time.

**Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that:**

**TEMPORARY RESTRAINING ORDER**

1.      Plaintiff's Motion for Temporary Restraining Order against Defendant JOHN DOE is GRANTED.

2.      Defendant JOHN DOE and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service

or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant JOHN DOE or any business entity through which he acts or which acts in active concert or participation with him; including but not limited to those assets currently held in: (1) the Destination Addresses, (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in the Destination Addresses.

### NOTICE NOT PROVIDED TO PRESENTLY-UNIDENTIFIED DEFENDANT

3.      Notice was not provided to Defendant JOHN DOE prior to entry of this Order because his identity is presently unknown to Plaintiff.  The Court will separately consider a request from Plaintiff to engage in expedited discovery through which Plaintiff intends to obtain from the recipient cryptocurrency exchanges listed above Defendant JOHN DOE's identity, including a physical and/or electronic address at which Defendant JOHN DOE can be contacted about the claims asserted against him in this lawsuit.

### BOND TO BE POSTED

4.      Pursuant to Fed.R.Civ.P. 65(c), requiring that security must typically be posted by Plaintiff, the Court has determined that _____ Dollars ($_____) would be more than adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order.  Therefore, pursuant to Fed.R.Civ.P. 65, Plaintiff shall -- within ten (10) calendar days of this Order -- post a bond in the amount of _____ ($_____) to secure this Order.  In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

5.      Upon a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiff's bond requirement as means of providing a source of funds to which Defendant JOHN DOE may be entitled for a wrongful injunction or restraint.

### PRELIMINARY INJUNCTION HEARING

6.      Pursuant to Fed.R.Civ.P. 65(b), Defendant JOHN DOE shall appear on _____, 2022 at ___:___ a.m./p.m. before United States District Judge

_____ at the U.S. District Court, Bakersfield Federal Courthouse, 510 19th Street, Courtroom _____, Bakersfield, CA 93301, for a hearing at which Defendant JOHN DOE may show good cause why this Court should not enter a preliminary injunction, enjoining the violations of law alleged in Plaintiff's Complaint and imposing such additional relief as the Court deems just and proper, pending final ruling on the claims asserted against Defendant JOHN DOE.

7.      Defendant JOHN DOE shall file with the Court and serve on Plaintiff's counsel any answering affidavits, pleadings, motions, expert reports or declarations and/or legal memoranda on or before _____, 2022, which is no later than five (5) days prior to the hearing for preliminary injunction.

8.      If Defendant JOHN DOE timely files with the Court any papers opposing entry of a preliminary injunction, Plaintiff may file with the Court responsive or supplemental pleadings, materials, affidavits, or memoranda and serve same on Defendant JOHN DOE shall or his counsel-of-record on or before _____, 2022, which is no later than two (2) days prior to the preliminary injunction hearing.

9.      Defendant JOHN DOE is hereby on notice that failure to timely serve and file his opposition, or failure to appear at the hearing, may result in the imposition of a preliminary injunction against him pursuant to Fed.R.Civ.P. 65.

**DURATION OF TEMPORARY RESTRAINING ORDER**

10.     The Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed.R.Civ.P. 65(b)(2) unless, for good cause shown, this Order is extended or Defendant JOHN DOE consents that it should be extended for a longer period of time.  However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

11.     Defendant JOHN DOE is further notified of his right to apply to the court for modification or dissolution of this Temporary Restraining Order, if appropriate and supported by a showing of good cause, on two (2) days' notice or such shorter notice as the court may allow.  *See*, Fed. R. Civ. P. 65(b)(4) and Local Rule 231(c)(8).

**SERVICE OF THIS ORDER AND RELATED FILINGS**

12.     As soon as is practical upon learning from the Recipient Cryptocurrency Exchanges Defendant JOHN DOE's true identity and obtaining his contact information, Plaintiff shall forthwith

serve a copy of the Complaint, Motion, and this Order on Defendant JOHN DOE by U.S. First Class Mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of Plaintiff, by private process server, upon any person or entity that may have possession or control of any property, property right, funds, or asset that may be subject to any provision of this Order.

13.     The above dates may be revised upon stipulation by all parties and approval of this Court.

DONE and ORDERED in Chambers in Bakersfield, California, this _____ day of June 2022 at _____:_____ a.m./p.m. Pacific Time.

_____
UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28