Matt Putterman (CA Bar No. 306845)
**PUTTERMAN LAW, APC**
23 Corporate Plaza Drive - Suite 150
Newport Beach, CA 92660
Telephone: (949) 271-6382
E-Mail: Matt@Putterman-Law.com

David C. Silver (*pro hac vice forthcoming*)
**SILVER MILLER**
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone: (954) 516-6000
E-Mail: DSilver@SilverMillerLaw.com

*Attorneys for Plaintiff Graciela Jacobo*

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACIELA JACOBO, an individual;<br><br>　　Plaintiff,<br><br>v.<br><br>JOHN DOE, an individual;<br><br>　　Defendant. | Case No. 1:22-cv-00672-DAD-BAK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY** |

## TABLE OF CONTENTS

**Page**

RELEVANT FACTUAL BACKGROUND .................................................................................. 4

ARGUMENT .................................................................................................................................. 8

   I.    Plaintiff Needs Information from Non-Parties to Identify John Doe ................................. 8

   II.   The Court Should Exercise Its Broad Discretion -- Especially in the Context of a Preliminary Injunction against an Unidentified John Doe Defendant -- and Allow Expedited Discovery ......................................................................................................... 11

   III.  Good Cause Exists to Allow Expedited Discovery to Identify John Doe ........................ 14

CONCLUSION ............................................................................................................................ 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AF Holdings, LLC v. Doe*
  Case No. 2:12-cv-2207-KJM-DAD, 2012 WL 6608993 (E.D. Cal. Dec. 18, 2012) (Drozd, J.) ... 13

*Berlin Media Art E.K. v. Does 1 through 146*
  Civ. No. S-11-2039-KJM-GGH, 2011 WL 4056167 (E.D. Cal. Sept. 12, 2011) ................... 13

*Criswell v. Boudreax*
  Case No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675 (E.D. Cal. Sept. 2, 2020) (Drozd, J.) ... 13

*Educata Corp. v. Scientific Computers, Inc*.
  599 F. Supp. 1084 (D. Minn.), *aff'd in part and appeal dismissed in part*, 746 F.2d 429 (8th Cir. 1984) ...................................................................................................................... 12

*Ellsworth Assocs., Inc. v. United States*
  917 F. Supp. 841 (D. D.C. 1996) ……………………………………………………………… 12

*Fimab-Finaziaria Maglificio Biellese Fratelli Fila Sp.A. et al. v. Helio Import/Export, Inc., et al.*
  601 F. Supp. 1 (S.D. Fla. 1983) ...................................................................................... 12

*Hunt v. County of Orange*
  672 F.3d 606 (9th Cir. 2012) .......................................................................................... 11

*Integra Bank N.A. v. Trans Continental Airlines, Inc*.
  2007 U.S. Dist. LEXIS 7781 (M.D. Fla. Feb. 2, 2007) .................................................. 11-12

*Kaur v. City of Lodi*
  Case No. 2:14-cv-0828 GEB AC, 2014 WL 2154483 (E.D. Cal. May 22, 2014) .................. 13

*Klay v. All Defendants*
  425 F.3d 977 (11th Cir. 2005) ........................................................................................ 12

*Monsanto Co. v. Woods*
  250 F.R.D. 411 (E.D. Mo. 2008) ................................................................................ 12-13

*Perez v. Miami-Dade Co*.
  297 F.3d 1255 (11th Cir. 2002) ...................................................................................... 12

*Pioneer Hi-Bred Int'l, Inc. v. Does*
  Case No. 12-06046-cv-SJ-DGK, 2012 WL 12910607 (W.D. Mo. May 18, 2012) ................ 12

*Quad Int'l, Inc. v. Doe*
  Case No. 2:12-cv-2336-GEB-KJN, 2012 WL 5355565 (E.D. Cal. Oct. 30, 2012) ................ 13

*Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*
   907 F.Supp.2d 1086 (N.D. Cal. 2012) ........................................................................... 13

*Semitool, Inc. v. Tokyo Electron Am., Inc*.
   208 F.R.D. 273 (N.D. Cal. 2002) ................................................................................... 13


**<u>Rules</u>**

F<small>ED</small>. R. C<small>IV</small>. P. 26(d) ............................................................................................................. 12

F<small>ED</small>. R. C<small>IV</small>. P. 26(f) .............................................................................................................. 11

F<small>ED</small>. R. C<small>IV</small>. P. 30(a)(2)(A)(iii) .................................................................................................. 12

F<small>ED</small>. R. C<small>IV</small>. P. 33(a) ............................................................................................................... 12

F<small>ED</small>. R. C<small>IV</small>. P. 33(b)(2) ............................................................................................................ 12

F<small>ED</small>. R. C<small>IV</small>. P. 34(b) ............................................................................................................... 12

F<small>ED</small>. R. C<small>IV</small>. P. 45 .................................................................................................................... 12

Plaintiff GRACIELA JACOBO, an individual ("Plaintiff" or "JACOBO"), by and through her undersigned attorneys, respectfully submits this memorandum of points and authorities in support of her motion for entry of an Order permitting Plaintiff to engage in expedited discovery from any relevant third-parties to enable Plaintiff to secure documents and information pertaining to Defendant JOHN DOE, an individual ("JOHN DOE") -- a cryptocurrency wallet/account holder who is alleged to have possessed and/or stolen from Plaintiff millions of dollars in cryptocurrency belonging to Plaintiff (the "Motion").

## RELEVANT FACTUAL BACKGROUND

On or about May 5, 2022, Plaintiff's son -- with whom she jointly maintains a MetaMask cryptocurrency wallet -- was contacted by Defendant JOHN DOE on Twitter, a social networking service. [Docket Entry No. ("DE") 1 at ¶ 11]. After exchanging some messages on Twitter, Plaintiff's son began engaging in conversations with Defendant on the messaging platform WhatsApp. [*Id.*] Defendant directed their conversation to cryptocurrency investing and said he could show Plaintiff how easy it was to make money with cryptocurrency. [*Id.*] At all times relevant hereto, Plaintiff's son acted as an authorized agent for Plaintiff to communicate on her behalf pertaining to the matters addressed herein. [*Id.* at ¶ 12].

Defendant represented to Plaintiff's son that Defendant and the entity for which Defendant worked is affiliated with the Ethereum Foundation, a very well-known and widely-respected nonprofit organization dedicated to supporting Ethereum and related technologies. [*Id.* at ¶ 13]. Ethereum -- as the Ethereum Foundation's website explains -- is a "global, open-source platform used for programmable money and decentralized applications that allow users have control over their own data." [*Id.* at ¶ 14].

Through his communications with Plaintiff's son, Defendant established in Plaintiff's son and Plaintiff herself -- who conferred with her son on all such matters -- a sense of trust, reliability, and dependability. [*Id.* at ¶ 15].

Under Defendant's guidance and instruction, Plaintiff's MetaMask cryptocurrency wallet was linked to a website (www.AMMDeFi.org) that Defendant represented would allow Plaintiff

to have her assets placed into a liquidity pool for a limited period of time. [*Id*. at ¶ 16]. Upon the expiration of that limited period of time, Plaintiff would receive back her invested assets plus interest on her contribution to the pooled funds. [*Id*.] Plaintiff funded her MetaMask wallet with approximately One Million Four Hundred Thousand Dollars ($1,400,000.00); used those funds to purchase Tether[1], and then allowed those Tether to be invested in the vehicle explained and overseen by Defendant JOHN DOE. [*Id*. at ¶ 17]. The investment vehicle into which Defendant lured Plaintiff, however, was falsely represented and was nothing but a sham vehicle designed by Defendant to gain direct access to the funds in Plaintiff's MetaMask wallet. [*Id*. at ¶ 18]. Whenever Defendant showed Plaintiff an up-to-date balance of her investment position, the information provided to Plaintiff was complete fiction. [*Id*. at ¶ 19].

Moreover, each time Plaintiff requested to withdraw some or all of her funds from the investment pool, Defendant proffered false excuses as to why Plaintiff would be unable to withdraw any of her funds. [*Id*. at ¶ 20]. When Plaintiff sought to withdraw a portion of her funds, Defendant represented that withdrawal would require Plaintiff to pay an exit fee of several hundred thousand dollars, which made withdrawal imprudent and excessively costly. [*Id*. at ¶ 21]. Upon information and belief, Defendant's excuse of an "exit fee" was a fabrication designed to keep Plaintiff's funds under Defendant's control and designed to afford Defendant additional time to abscond with Plaintiff's assets. [*Id*. at ¶ 22]. The only true reason why Plaintiff was unable to withdraw her funds is that Defendant was defrauding her and taking every available opportunity to extort additional funds from Plaintiff. [*Id*. at ¶ 23].

Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendant has stolen all of Plaintiff's assets; and those assets have been transferred to cryptocurrency accounts under Defendant's sole control or have been liquidated into

---

[1] Tether (often abbreviated with the symbol "USDT") is a cryptocurrency hosted on the Ethereum and Bitcoin blockchains. It is categorized as a "stablecoin," because it was originally designed so that each coin would always be worth One Dollar ($1.00 USD). Thus, one USDT is worth roughly $1.00; and 1,400,000 USDT are worth roughly $1,400,000.00. Tether has one of the largest market caps, and is one of the most widely-circulated cryptocurrencies, in the world.

fiat currency and dissipated by Defendant. [*Id*. at ¶ 24].  For example, Plaintiff's stolen assets have been traced to, *inter alia*, the following cryptocurrency wallet addresses at cryptocurrency exchanges BINANCE, FTX, OKX (OKEx), POLONIEX, TOKENLON, and GATE.IO -- wallet addresses which are believed to be owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets and which have been used to launder the assets stolen from Plaintiff [*Id*. at ¶ 25)]:

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| Binance | 43ecaea7f78fe65f83646a864b2c73349793ddfe | USDT | 45,730.26604 |
| Binance | 5cccacf95cd5df55d95e3864af4551de094784c2 | USDT | 222,583.588 |
| Binance | 8f44af4f841ffd7db201e81f8deb66e6eea99c06 | USDT | 45,543.36493 |
| Binance | bff9f1d0d9156feb7b3182102d4ac226b9c2c44c | USDT | 95,118.95336 |
| Binance | c7e185922f923c438fc29b92309153816ba17498 | USDT | 4,082.182561 |
| | | TOTAL | 413,058.3549 USDT |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| FTX | 456fc7ea0b17b51e08a861af94e13f1dceba1db9 | USDT | 83,856.95211 |
| | | TOTAL | 83,856.95211 USDT |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| OKX (OKEx) | 64452a2f3af318d86d947ba33beadfe39456ed3a | USDT | 272,540.4773 |

6

Case No. 1:22-cv-00672-DAD-BAK
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| | | TOTAL | 272,540.4773 USDT |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| Poloniex | ee861cfb2a34eb5e73ccd92fce9e4b3b6a37a2db | USDT | 72,386.28453 |
| | | TOTAL | 72,386.28453 USDT |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| TokenIon | 8d90113a1e286a5ab3e496fbd1853f265e5913c6 | USDT | 230,153.7314 |
| | | TOTAL | 230,153.7314 USDT |

| Exchange | Destination Address | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|
| gate.io | 29084a44f69510471e41a91f37ee59c088e71804 | USDT | 46,782.12103 |
| | | TOTAL | 46,782.12103 USDT |

As a result of the foregoing scheme, Plaintiff has lost approximately One Million Four Hundred Thousand Dollars ($1,400,000.00) and is left trying to get answers to help her uncover where her funds are or where they went after they were stolen by JOHN DOE.

Because of the exigent circumstances and this Court's broad discretion in directing

discovery and managing its docket -- particularly in the preliminary injunction context -- expedited discovery is warranted to resolve the issue of whether the June 7, 2022 Temporary Restraining Order (TRO) entered by the Court *without* notice against JOHN DOE [DE 6] should be expanded into a preliminary or permanent injunction *with* notice to JOHN DOE. Conscious of the time constraints and the inherent burdens of discovery, Plaintiff has already crafted narrowly-tailored categories of documents to be sought from the non-parties via subpoenas that set forth the requests which she intends to employ to ensure the full, fair, and efficient development of the factual record necessary to adjudicate the material issues raised in the Complaint and the injunction issue.

At this time, Plaintiff's proposed expedited discovery is focused solely on JOHN DOE's identity and the cryptocurrency wallets and accounts JOHN DOE owned, operated, or controlled at least in part, as those wallets/accounts pertain to the central issues in dispute in the Complaint and the TRO (which Plaintiff will request be extended into a preliminary or permanent injunction). To be clear, Plaintiff's expedited discovery efforts are not related to monetary damages or any issues beyond those that must be resolved at this preliminary stage; rather, the documents and information sought by Plaintiff are required for the Court to properly evaluate whether -- after JOHN DOE has been identified -- the TRO should be extended into a preliminary or permanent injunction with notice to JOHN DOE.

In support of her request for expedited discovery, Plaintiff alleges as follows:

## ARGUMENT

### I. Plaintiff Needs Information from Non-Parties to Identify John Doe

1. As part of the June 7, 2022 TRO entered by the Court, the Court ordered that:

   *pending a hearing on a motion for a preliminary injunction, defendant and any person or entity acting in concert with him shall be restrained and enjoined from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of defendant or any business entity which acts in concert with him, including but not limited to those assets currently held in:*

   *a. The Destination Addresses (see Compl. at ¶ 25), and*

> b. Any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in the Destination Addresses.

DE 6 at 12.

2. In the TRO, the Court further ordered:

> Plaintiff is directed to file a motion for expedited discovery in this action within fourteen days (14) of the entry of this order so that she may seek to obtain defendant's identity from the recipient cryptocurrency exchanges listed above, including a physical and/or electronic address at which defendant can be given notice of the claims asserted against him in this lawsuit as well as of this order.

DE 6 at 13.

3. Plaintiff needs the Recipient Cryptocurrency Exchanges listed above to identify JOHN DOE (*e.g.*, name, physical address, mailing/contact address) so Plaintiff can properly name him in this lawsuit and provide him due notice before requesting that the Court extend the TRO into either preliminary or permanent injunctive relief.

4. Plaintiff further needs to conduct an exigent investigation of all Recipient Cryptocurrency Exchange accounts held by, for, or on behalf of JOHN DOE to identify where Plaintiff's funds were transferred. To the extent JOHN DOE has already disposed of any of Plaintiff's assets, Plaintiff can serve a subpoena on any other cryptocurrency exchange, wallet operator, or financial institution to which those assets were transferred in a further effort to freeze them before they are moved again or liquidated in their entirety.

5. Likewise, as a means of tracing those assets back to Plaintiff through JOHN DOE and beyond, Plaintiff needs the ability to serve a subpoena upon any third-party claiming to be a bona fide purchaser in good faith who now holds, or once held, the cryptocurrency assets stolen from Plaintiff by JOHN DOE.

6. In light of the foregoing, Plaintiff submits that the following narrowly-tailored requests to each Recipient Cryptocurrency Exchange will provide her valuable information she needs to identify JOHN DOE and protect her interests as well as her assets while affording JOHN DOE notice of this action:

(a) All documents regarding, reflecting, recording, or memorializing account opening and closing, including JOHN DOE's actual legal name, all proofs of identification (such as government-issued photo ID), date of birth, Social Security Number, telephone number, electronic mail address, residential/mailing address, and Know Your Customer ("KYC") and Anti-Money Laundering ("AML") information compiled by <<YOUR EXCHANGE>>.

(b) All documents regarding, reflecting, recording, or memorializing transactions, funding, registered funding sources (*i.e.*, bank accounts or other sources of funding tied to JOHN DOE's account[s]), and account holdings, including but not limited to transactions into or out of the following wallet address: _____ (the "Wallet Address").

(c) All transactional logs for all activity in JOHN DOE's <<EXCHANGE>> account(s), including but not limited to all holding pages, trade confirmations, beginning balance, all trades (whether initiated by JOHN DOE or someone else) or trade orders (whether executed or unexecuted), all date/time stamps for each trade, date/time stamps showing when each trade was filled (as applicable), account balance following each executed trade, the ending balance, and the names and public addresses of all counterparties to each trade.

(d) All documents regarding, reflecting, recording, or memorializing any suspicion or belief held by <<YOUR EXCHANGE>> that the JOHN DOE account at <<YOUR EXCHANGE>> to which the Destination Address is linked was linked to or associated with any other <<EXCHANGE>> account(s).

(e) Correspondence exchanged by and between <<YOUR EXCHANGE>> and JOHN DOE.

(f) Correspondence exchanged by and between <<YOUR EXCHANGE>> and any third-party concerning or relating to JOHN DOE. NOTE: The requested correspondence is not to include any Suspicious Activity Reports (SARs) filed by <<YOUR EXCHANGE>> with any governmental regulator or other authority, any drafts of such SARs, or any documents that expressly reference any SARs being filed.

7. By being provided JOHN DOE's identifying information by the Recipient Cryptocurrency Exchanges, Plaintiff will be able to employ appropriate legal measures and afford JOHN DOE due process in defending himself against Plaintiff's claims of theft.

8. Additionally, once a Recipient Cryptocurrency Exchange has identified the accountholder to whom Plaintiff's stolen funds flowed, the accountholder would be asked to provide the following to demonstrate the accountholder is a bona fide purchaser in good faith and not JOHN DOE himself:

> All documents and information, including but not limited to: (i) Transactional IDs related to the your acquisition of the cryptocurrency in question; and (ii) information in your possession identifying the seller from whom you acquired the tainted cryptocurrency in question -- showing how the cryptocurrency was obtained, from whom the cryptocurrency was obtained, and the payment records for your acquisition of the tainted cryptocurrency.

9. Certain information related to the operative facts in this matter -- particularly JOHN DOE's identity -- is within the Recipient Cryptocurrency Exchanges' sole possession, custody, and control or within the control of other third parties who will be identified in discovery.

10. Expedited discovery would facilitate the management of this action, conserve the resources of the parties and the Court, and move the case toward an earlier disposition without prejudice to JOHN DOE.

## II. The Court Should Exercise Its Broad Discretion -- Especially in the Context of a Preliminary Injunction against an Unidentified John Doe Defendant -- and Allow Expedited Discovery

11. This Court has broad discretion to manage the timing of discovery, especially where a request for a preliminary injunction makes it infeasible to wait for the Rule 26(f) conference to serve discovery requests. *See*, *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) ("District courts have broad discretion to manage discovery and to control the course of litigation . . . ."); *Integra Bank N.A. v. Trans Continental Airlines, Inc.*, 2007 U.S. Dist. LEXIS 7781, *7

(M.D. Fla. Feb. 2, 2007) (Federal Rules of Civil Procedure "expressly provide that a Court may shorten the time for a party to provide discovery"); *Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir. 2005) (Court has "broad discretion in managing pretrial discovery matters"), quoting *Perez v. Miami-Dade Co.*, 297 F.3d 1255, 1263 (11th Cir. 2002); *see also*, Fed.R.Civ.P. 26(d) (permitting deviation from normal rule when "authorized ... by order"); *id.*, Advisory Committee Notes ("This subdivision is revised to provide that formal discovery ... not commence until the parties have met and conferred as required by subdivision (t).  Discovery can begin earlier if authorized . . . by . . . order . . . .  This will be appropriate in some cases, such as those involving requests for a preliminary injunction . . . .).  The Federal Rules of Civil Procedure contemplate that discovery may be expedited in appropriate circumstances. Fed.R.Civ.P. 30(a)(2)(A)(iii), 33(a), 33(b)(2), 34(b), and 45. **Expedited discovery is particularly appropriate in the preliminary injunction context.**  *See*, *e.g.*, *Fimab-Finaziaria Maglificio Biellese Fratelli Fila Sp.A. et al. v. Helio Import/Export, Inc., et al.*, 601 F. Supp. 1, 3 (S.D. Fla. 1983); *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841 (D. D.C. 1996).  Such discovery "better enables the court to judge the parties' interests and respective chances for success on the merits." *Educata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn.) (granting expedited discovery), *aff'd in part and appeal dismissed in part*, 746 F.2d 429 (8th Cir. 1984).  Motions for expedited discovery are appropriate where the movant demonstrates a need to obtain inspection of documents in a shortened time period. *See*, *Integra Bank N.A.*, 2007 U.S. Dist. LEXIS 2007 at *7-8.

12. **Moreover, "Courts allow discovery to identify Doe defendants, and courts allow expedited discovery where good cause is shown."** *Pioneer Hi-Bred Int'l, Inc. v. Does*, Case No. 12-06046-cv-SJ-DGK, 2012 WL 12910607, at *1 (W.D. Mo. May 18, 2012) (granting expedited discovery from non-party to identify Doe Defendants' identities).  "Under the good

cause standard, the party requesting expedited discovery must show that the need for expedited discovery, in consideration of [the] administration of justice, outweighs prejudice to [the] responding party." *Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008). In *Criswell v. Boudreax*, Case No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675 (E.D. Cal. Sept. 2, 2020) (Drozd, J.), this Court explained the good cause standard as follows:

> In determining whether good cause exists, courts consider: (1) whether a preliminary injunction is pending, (2) the breadth of the discovery request, (3) the purpose for requesting the expedited discovery, (4) the burden on the defendants to comply with the requests, and (5) how far in advance of the typical discovery process the request was made.

*Id.* at *25 (citing *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F.Supp.2d 1086, 1099 (N.D. Cal. 2012)). *See also*, *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *Kaur v. City of Lodi*, Case No. 2:14-cv-0828 GEB AC, 2014 WL 2154483, at *1 (E.D. Cal. May 22, 2014) ("[A] court may authorize early discovery 'for the parties' and witnesses' convenience and in the interests of justice.'").

13. **On several occasions, this Court has applied the conventional standard of good cause in granting a plaintiff's request for expedited discovery -- finding that good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.** *See*, *e.g.*, *Criswell*, 2020 WL 5235675 at *26 (authorizing expedited discovery); *AF Holdings, LLC v. Doe*, Case No. 2:12-cv-2207-KJM-DAD, 2012 WL 6608993, at *1-2 (E.D. Cal. Dec. 18, 2012) (Drozd, J.) (concluding requested expedited discovery is appropriate); *Quad Int'l, Inc. v. Doe*, Case No. 2:12-cv-2336-GEB-KJN, 2012 WL 5355565 (E.D. Cal. Oct. 30, 2012) (granting application for leave to conduct early discovery); *Berlin Media Art E.K. v. Does 1 through 146*, Civ. No. S-11-2039-KJM-GGH, 2011 WL 4056167 (E.D. Cal. Sept. 12, 2011) (same).

### III. Good Cause Exists to Allow Expedited Discovery to Identify John Doe

14. In the instant matter, Plaintiff meets the "good cause" standard. The discovery Plaintiff seeks is narrowly drawn and is requested because the information relevant to identifying JOHN DOE and resolving the issues of fact and law the Court must confront are in the possession, custody, and control of the Recipient Cryptocurrency Exchanges and other related non-parties. Plaintiff reasonably believes that as time quickly passes, JOHN DOE will dissipate any funds in his thus-far-identified cryptocurrency wallets and account(s) -- thus putting JOHN DOE and his evidence beyond Plaintiff's reach. The burden on the Recipient Cryptocurrency Exchanges and related non-parties in having to respond to the discovery requests is *de minimis*, as all of the documents and information sought should be readily accessible by the Recipient Cryptocurrency Exchanges and non-parties. Similarly, the burden on JOHN DOE is not only *de minimis* but would actually serve to fulfill JOHN DOE's right to due process in defending himself -- once he appears in this matter -- against the claims of theft and conversion that have been alleged against him. Lastly, although the request is being made in advance of the typical discovery process, it is only being made because JOHN DOE's true identity is unknown and because Plaintiff reasonably fears that JOHN DOE will dissipate Plaintiff's stolen cryptocurrency assets in an effort to put those assets, and evidence of the location where they were ultimately transferred, out of Plaintiff's reach.

15. In short, because application of the ordinary discovery timetable would not properly suit the parties in light of JOHN DOE's unknown identity and the allegations posed by Plaintiff's Complaint, and because good cause exists to permit a limited round of discovery related to the issues raised by the Complaint; the Court is requested to issue an Order directing expedited discovery.

**CONCLUSION**

For the foregoing reasons, Plaintiff GRACIELA JACOBO respectfully moves this Honorable Court for entry of an Order granting this motion and permitting Plaintiff to engage in expedited discovery from any relevant third-parties to enable Plaintiff to secure documents and information pertaining to Defendant JOHN DOE's identity forthwith.

Respectfully submitted,

By: */s/ Matt Putterman*
Matt Putterman (CA Bar No. 306845)
**PUTTERMAN LAW, APC**
23 Corporate Plaza Drive - Suite 150
Newport Beach, CA 92660
Telephone: (949) 271-6382
E-Mail: Matt@Putterman-Law.com

David C. Silver (*pro hac vice* forthcoming)
**SILVER MILLER**
4450 NW 126th Avenue – Suite 101
Coral Springs, Florida 33065
Telephone: (954) 516-6000
E-Mail: DSilver@SilverMillerLaw.com

*Attorneys for Plaintiff Graciela Jacobo*

Dated:  June 8, 2022